[Civ. No. 19190. Second Dist., Div. Two. June 22, 1953.]

EZILDA MARIE SUTTON, Appellant, v. WALT DISNEY PRODUCTIONS (a Corporation), Respondent.

George De Roy for Appellant.

Gunther R. Lessing, O'Melveny & Myers, Jackson W. Chance, William W. Alsup and Harned Pettus Hoose for Respondent.

MOORE, P. J.—Appeal from judgment entered after the trial court had sustained a demurrer to the amended complaint. Appellant insists that a comparison of the contents

of her book entitled "Circus in Nightland" with the film produced by respondent entitled "Beaver Valley" can leave no doubt that some reasonable minds would find that the film utilized a portion of the contents of the book and that, therefore, defendant's* demurrer was unjustly sustained. Pursuant to the stipulation of the parties and the provisions of section 426, subdivision 3, of the Code of Civil Procedure, both book and film were deemed part of the pleading under attack. This opinion is the result of the study of all pleadings, exhibits and authorities.

The book is a fantastic story written for the young. Its central figure is a child named Nancy who by reason of an injury to her foot missed an opportunity to attend the circus on its annual visit to her town. To acquaint her with the sights of the menagerie and the performances of the beasts that furnished the interest and hilarity at the show, a joyful, sympathetic chum came and described the animals and their acts. So impressed was Nancy that after she fell asleep, a fairy entered her room, escorted her into the wood and introduced her to more than 30 small animals and insects which staged a "nightland circus." During the performance the fairy so instructed Nancy as to the mode of life of all the creatures that the little girl learned the habits, behavior and characteristics of the entire population of the woodland. On Nancy's finding her new friends more interesting and amusing than the inmates of the circus could possibly have been, plaintiff wrote her story, illustrating it with fantastic drawings of the newly found friends, the actors in the woodland dream. A field rat and a red squirrel were ringmasters. The attacine moth with its four wings and six legs was there still thriving on the food it ate while in the larva stage. The garter snake left her 40 babies and at once consumed a colony of earthworms and a school of tadpoles. The gopher ran backwards under the lifted sod carpet; a mother frog laid eggs on blades of grass; a ferret harassed the prairie dog and the rabbit, and robbed the quail of her eggs. Two crickets broke the silence of the nocturnal festivities by scraping their wings together; the tarantula crept from his secret abattoir and spun the circus tightrope for the two larvae to perform upon; the hoot owl eyed the mice, gophers and ferrets from on high. A mother opossum with naked ears and piglike nose sat on a limb, her pouch alive with her

---

*All lunar and fictitious defendants are out leaving only the corporation.

naked babies. A bat flew from a cave with her infant holding fast to her neck and sought the night-roaming insects. Nancy was perturbed by the whining of a frog crying for his mamma, and by the hooting of the neglected owl. The tent for the circus was fabricated, the parade began, Nancy clapped her hands for joy and sat entranced as the performers made their music or did their stunts with enviable skill. A group of lizards posed as models; two chameleons begged for some dewdrops; the friendly pacific bullsnake coiled near the ring, visited the garter snake and dined on a course of young rabbits. With a variety of beetles, spiders, flies, and moths in action, the red squirrel assisted by the sprites, elves and fairies brought the memorable circus of nightland to a successful close.

### BEAVER VALLEY

Turning now to the picture "Beaver Valley" made by respondent, it is readily found to be denuded of fantastic trimmings, nothing like a cartoon. It is not the product of fancy. It is real life among mammals, birds, amphibia and fish in the lands of Minnesota and Montana. Its primary purpose is to educate men and women of mature years as well as children, to reveal the nature and appearance of the denizens of the forest, rivers and plains. Such creatures were photographed in the environments that nurture them. The subject of each picture shows it to have been "shot" in the vicinity where it dwells. The comment describes their mode of living, their food, friends and enemy. It is a film of nature's progeny in their pristine habitat whose authors animated it by appropriate comment intoned to harmless music. It is the type of film frequently produced in the past for education and amusement.

Flashing sunlight and creeping shadows fall across the woodland, the lake or river. The untiring beaver builds his dam; the moose, the bear, the otter, the coyote and raccoon in turn are subjected to the searching eye of the camera. The weasel and the chipmunk make hasty marches across the meadow. Growling bullfrogs scan the gloriously blue waters and the landscape with disdain. Schools of salmon leap mighty rapids, and many die in unsuccessful effort to gain higher levels and a freeway to spawning pools. The imperious eagle surveys the brilliant scene from his lofty heights; the swift hawk dives into a covey of his prey; swarms of ducks and geese quack and honk as they come to rest on waters or wander through wet lands in quest of food. The raven caws

for his lost mate and the heron quietly searches for his fish or worms or mice that he too might feast again, but stands motionless when the coyote comes near. The entire scene is colorful, glamorous, intriguing, calculated to captivate and enthrall the spirit of restless man and convince him that not all beauty is artificial, or that all skill or happiness is in the genus homo.

## ARGUMENT

Appellant alleges that at defendant's request she delivered her book to respondent "with the oral understanding and agreement that in the event said defendants desired to use said literary composition and book for the production of a motion picture and photoplay, said defendants would buy and purchase the same, or the rights to use said literary composition in a motion picture and photoplay, from plaintiff."

She follows this with the allegations that defendant "retained plaintiff's said literary composition and book in its manuscript form in their possession a long period of time and examined, read, considered and became fully informed of and concerning, plaintiff's said literary composition and book and . . . had knowledge of the contents and subject matter of said literary composition and book and . . . without the knowledge, consent, or authority of or from plaintiff, during the year 1950, and continuously to and including the present time did deliberately and unlawfully appropriate and substantially copy plaintiff's said literary composition and book and produced, sold and continued to produce and sell and distribute and exhibit said literary composition and book in a motion picture and photoplay . . . Beaver Valley." While the foregoing allegations would in the ordinary pleading constitute a valid pleading against a general demurrer, they do not comprise a complete declaration of the plaintiff's cause, in actions for alleged infringement of plaintiff's rights in and to a literary or artistic composition. Section 426, Code of Civil Procedure, requiring plaintiff's story to be attached to the complaint in infringement actions, applies to actions on contract as well as to suits grounded in tort for plagiarism. (*Weitzenkorn* v. *Lesser*, 40 Cal.2d 778, 782 [256 P.2d 947].)

 By virtue of the presence of both products before the court, plaintiff's comments in the pleading as to the nature and meaning of her allegations are surplusage without official status, mere conclusions of the pleader. (*Weitzenkorn* v. *Lesser, supra,* 785.) We are thus by a trial of the demurrer placed in a position to try the merits of plaintiff's charge that

the corporate defendant copied her composition into a film and has "earned and received great profits and sums of money by reason of the . . . appropriation and use" of plaintiff's composition. (*Washer* v. *Bank of America,* 21 Cal.2d 822, 830 [136 P.2d 297, 155 A.L.R. 1338]; *Alphonzo E. Bell Corp* v. *Bell etc. Syndicate,* 46 Cal.App.2d 684, 691 [116 P.2d 786].) ██ Both products are in final form and judgment can be cast without resorting to other evidence of the truth of the pleading. (*Weitzenkorn* v. *Lesser, supra,* 791.)

Count I of the amended complaint alleges the breach of an express contract, count II alleges substantially the same facts in the common counts as an implied-in-fact contract. Hence there is no question raised as to the protectibility of appellant's work. ██ Inasmuch as the demurrers acknowledge respondent's access to "Circus in Nightland," the only issue tendered on appeal is that of similarity. Unless appellant can demonstrate a substantial similarity between her ideas as embodied in her book and the motion picture "Beaver Valley," she cannot state a cause of action in contract. (*Weitzenkorn* v. *Lesser, supra; Kurlan* v. *Columbia Broadcasting System,* 40 Cal.2d 799, 809 [256 P.2d 962].)

██ A comparison of the two works leaves no suspicion that the film is a reproduction of the book. The only ground of similarity is that both relate to animals. The book is a fantasy of animals, reptiles, amphibians and insects endowed with intellectual attributes; the film is a real-life portrayal of animals in the wilds with no particular order or story except the loose thread of a young beaver's adventures in establishing his own dam. Accordingly, the holding of the trial court that the two finished products have no substantial similarity to each other, and hence that the demurrer to count I must be sustained was correct.

The same conclusion must be reached as to count II. ██ If a plaintiff relies on the same facts to plead both a specific count and a common count, the latter is vulnerable to the same attacks as the former. (*Weitzenkorn* v. *Lesser, supra,* 793; *Hays* v. *Temple,* 23 Cal.App.2d 690, 695 [73 P.2d 1248]; *Harris* v. *Kessler,* 124 Cal.App. 299, 303 [12 P.2d 467].) ██ Hence, although generally a common count is not subject to attack by general demurrer (*Auckland* v. *Conlin,* 203 Cal. 776, 778 [265 P. 946]), under the facts of this case the lack of substantial similarity between the book and the motion picture precludes appellant from stating a cause of

action whether specifically pleaded as an express contract or generally as an implied-in-fact contract. The judgment of the trial court, therefore, was correct.

Affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied July 9, 1953, and appellant's petition for a hearing by the Supreme Court was denied August 20, 1953.