**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| U.S. BANK, N.A., Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-F, <br> *Plaintiff-Counter-Defendant-Appellant*, | No. 19-17033 <br><br> D.C. No. 2:15-cv-00218-KJD-NJK |
| v. | OPINION |
| WHITE HORSE ESTATES HOMEOWNERS ASSOCIATION, *Defendant-Appellee*, | |
| SFR INVESTMENTS POOL 1, LLC, *Defendant-Counter-Claimant-Cross-Claimant-Appellee*, | |
| v. | |
| MERIDIAS CAPITAL, INC.; MAT HOLDINGS, LLC, *Cross-Claim-Defendants.* | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted October 29, 2020
Portland, Oregon

Filed February 8, 2021

Before:  A. Wallace Tashima, Susan P. Graber, and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Ikuta

## SUMMARY[*]

### Nevada Foreclosure Law

The panel affirmed the district courts' summary judgment in favor of a homeowners' association ("HOA"), SFR Investments Pool 1, LLC, in a diversity action by U.S. Bank, N.A. seeking to set aside the HOA's foreclosure sale of real property in Nevada.

U.S. Bank argued that a mortgage-savings clause in the applicable covenants, conditions, and restrictions ("CC&Rs"), by itself, constituted unfairness that affected the sale.  The district court held that, because the clause did not affect the sale, the sale could not be set aside; and title vested with SFR Investments, the purchaser at the HOA sale.

The panel predicted that the Nevada Supreme Court would adhere to its several unpublished decisions, and hold that a mortgage-savings clause, by itself, did not constitute unfairness that affects a sale.  The panel held that the mortgage-savings clause, which stated that any lien for

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

unpaid assessments would be subordinate to any lien by the deed of trust, was void as a matter of Nevada law because it plainly conflicted with Nev. Rev. Stat. § 116.3116(2), which required liens for unpaid assessments to have superpriority status, and Nev. Rev. Stat. § 116.1104, which provided that the priorities cannot be modified by agreement. The panel further held that the mortgage-savings clause was void under the terms of the CC&Rs themselves. In addition, the panel held that U.S. Bank did not introduce any evidence in this case that the mortgage-savings clause affected this sale. Finally, the panel held that the Nevada Supreme Court in numerous unpublished decisions repeatedly rejected the same argument that U.S. Bank raised here, in materially indistinguishable circumstances.

The panel rejected U.S. Bank's remaining arguments. The panel held that no unfairness arose from the HOA's processing of payments. The panel declined U.S. Bank's invitation to remand the case to allow it to raise, for the first time, the argument that tender was futile and to present evidence on that point. Finally, the notice at issue here, which complied with the statutory requirements, did not violate due process.

Judge Ikuta dissented because she believed that the majority usurped the authority of the Nevada Supreme Court by deciding an important and open issue of Nevada state law. Judge Ikuta would certify to the Nevada Supreme Court the question of whether misleading CC&Rs constituted slight evidence of fraud, unfairness, or oppression affecting the sale.

**COUNSEL**

Melanie D. Morgan (argued) and Donna M. Wittig, Akerman LLP, Las Vegas, Nevada, for Plaintiff-Counter-Defendant-Appellant.

Jason Martinez (argued), Jacqueline A. Gilbert, and Diana S. Ebron, Kim Gilbert Ebron, Las Vegas, Nevada, for Defendant-Counter-Claimant-Cross-Claimant-Appellee.

Sean L. Anderson and Ryan D. Hastings, Leach Kern Gruchow Anderson Song, Las Vegas, Nevada, for Defendant-Appellee.

**OPINION**

GRABER, Circuit Judge:

Under Nevada law, a court has equitable discretion to set aside a valid foreclosure sale only if fraud, unfairness, or oppression affected the sale. In this case, a mortgage-savings clause in the applicable covenants, conditions, and restrictions ("CC&Rs") provided—contrary to Nevada law—that any lien for unpaid assessments would be subordinate to the first deed of trust. The clause was void as a matter of law, and no evidence suggests that anyone relied on the clause or that the clause affected the sale in any way. Plaintiff U.S. Bank nevertheless argues that the clause, by itself, constitutes unfairness that affected the sale. The district court disagreed and granted summary judgment to Defendants White Horse Estates Homeowners Association ("HOA") and SFR Investments Pool 1, LLC. Reviewing de novo, *CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n*, 962 F.3d 1103, 1106 (9th Cir. 2020), we agree with

the district court that, because the clause did not affect the sale, the sale could not be set aside. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In 2005, Tricia Thoen purchased a house within the White Horse Estates development in Las Vegas, Nevada. Thoen financed the purchase with a mortgage of more than $400,000, secured by a first deed of trust. In 2006, Thoen transferred her interest in the property to MAT Holdings, LLC ("MAT").

At all relevant times, the HOA maintained some amenities that were held in common by property owners within the development. Property owners such as MAT were subject to the HOA's CC&Rs, including a requirement to pay monthly assessments. MAT soon fell behind on payments to the HOA.

Although the HOA's monthly dues were tiny compared to the amount of the mortgage, Nevada law at the time[1] provided homeowners associations with a powerful tool to incentivize payments and, if necessary, to collect any deficient payments. In particular, Nevada law permitted a homeowners association to place a lien on the property for any delinquent payments. *See generally Bank of America, N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 621–22 (9th Cir. 2019) (per curiam). Any portion of the lien that consisted of the last nine months of unpaid monthly assessments, or any unpaid maintenance or

---

[1] In 2015, the Nevada legislature substantially revised the pertinent state statutes. *Vegas United Inv. Series 105, Inc. v. Celtic Bank Corp.*, 453 P.3d 1229, 1230 n.1 (Nev. 2019). All relevant actions at issue in this case predate those amendments, so we apply the law that was in effect before 2015. *Id.*

nuisance-abatement charges, had "superpriority" status over all other liens, including the first deed of trust. *Id.* at 622. If the homeowners association conducted a foreclosure sale on the lien and complied with statutory procedural requirements, the sale extinguished the first deed of trust. *Id.*

In 2010, MAT remained behind on payments, and the HOA recorded a "notice of delinquent assessment" lien. Someone (the record does not disclose who) paid the full amount of the deficiency, and the HOA released the lien.

But MAT fell behind on payments to the HOA again. In 2011, the HOA recorded a second lien. In 2012, the HOA began the foreclosure process by recording a notice of default and election to sell, which stated that MAT owed a total of $3,854.72. The servicer of the loan at the time, Bank of America, N.A., paid the full amount of $3,854.72, thus preserving the first deed of trust. In August 2012, Bank of America assigned the first deed of trust to U.S. Bank.

MAT then fell behind on payments to the HOA for a third time. In 2013, the HOA recorded a third lien. Later that year, the HOA recorded a notice of default and election to sell, which stated that MAT owed a total of $2,740.49. U.S. Bank took no action to preserve the first deed of trust. At a foreclosure sale on November 1, 2013, SFR bid the highest amount, $25,000. The recorded foreclosure deed estimated the value of the property as $308,823. The foreclosure sale complied with all statutory requirements, and a portion of the lien had superpriority status. Pursuant to Nevada law, the sale thus extinguished the first deed of trust.

U.S. Bank then brought this action under the district court's diversity jurisdiction, asking the district court to set aside the sale as a matter of equity. SFR filed counterclaims

against U.S. Bank and other entities, seeking to quiet title in its favor. The district court granted summary judgment to Defendants, quieting title in SFR's favor and declining to set aside the sale. U.S. Bank timely appeals.

## DISCUSSION

### A. *Principles of Diversity Jurisdiction*

The primary question in this case is one of state law: whether the mortgage-savings clause in the CC&Rs constituted unfairness that affected the sale such that the district court had equitable discretion to set aside the foreclosure sale. In a diversity case, the published decisions of the Nevada Supreme Court bind federal courts as to the substance of Nevada law. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). Here, though, the Nevada Supreme Court has not addressed squarely, in any published decision, the effect of a mortgage-savings clause by itself. Our role is thus to "predict how the state high court would resolve" the question in a published decision. *Id.* (internal quotation marks omitted).

As we explain in detail, below, the Nevada Supreme Court has held in several unpublished decisions that a mortgage-savings clause, by itself, does not constitute unfairness that affects a sale. Our cases do not resolve the appropriate level of deference that we must give to unpublished decisions of a state's highest court. At a minimum, we "may consider" those decisions because they may "lend[] support" to a conclusion as to what the Nevada Supreme Court would hold in a published decision.[2] *See*

---

[2] We likely owe the decisions even greater deference. Under Nevada Rule of Appellate Procedure 36(c), unpublished decisions by the

*Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (holding that we may consider unpublished decisions of a state's intermediate appellate court). We need not, and do not, decide precisely how much weight to give unpublished decisions of the Nevada Supreme Court. As we explain below, under any standard of deference, or even no deference at all, we readily predict that the Nevada Supreme Court would adhere to its unpublished rulings on the disputed point.

## B.  The Mortgage-Savings Clause

Under Nevada law, courts retain discretion to set aside a foreclosure sale if two circumstances are present: (1) an unreasonably low sales price, and (2) fraud, unfairness, or oppression that affected the sale. *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, (*Shadow Canyon*) 405 P.3d 641, 648 (Nev. 2017). The two factors work together:  a greater disparity in purchase price relative to market value requires only slight evidence of unfairness that affected the sale. *Id.* But "mere inadequacy of price is not in itself sufficient to set aside the foreclosure sale." *Id.* "The party seeking to set aside the sale on equitable grounds bears the burden to produce evidence showing that the sale was affected by fraud, unfairness, or oppression that would justify setting aside the sale." *Res. Grp., LLC v. Nev. Ass'n Servs.*, 437 P.3d 154, 160 (Nev. 2019) (en banc) (brackets and internal quotation marks omitted). If the record contains

---

Nevada Supreme Court issued after 2015 (which is true of the relevant decisions here) may be cited for their persuasive value. In that regard, they are akin to published decisions of a state's intermediate appellate court, which we "must follow" unless there is "convincing evidence" that the state's highest court would decide otherwise. *Goodrich v. Briones* (*In re Schwarzkopf*), 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotation marks omitted).

"no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside regardless of the inadequacy of price." *Shadow Canyon*, 405 P.3d at 648–49.

The Nevada Supreme Court has emphasized that any fraud, unfairness, or oppression is irrelevant if it did not affect the sale: "a court may set the sale aside" only "if the totality of the circumstances demonstrates that *the sale itself* was affected by 'fraud, unfairness, or oppression.'" *Res. Grp. LLC*, 437 P.3d at 160–61. Hence, in *Resources Group*, even though the trial court found that many equities favored the bank, the Nevada Supreme Court reversed the trial court's decision to set aside the sale because the bank had "fail[ed] to demonstrate that any of these equities constitute 'fraud, unfairness, or oppression' that affected the sales price." *Id.* at 161. Similarly, in *Shadow Canyon*, 405 P.3d at 650, the homeowners association listed, on the notice of sale, the wrong amount necessary to satisfy the unpaid lien, thus violating a clear statutory requirement. *Id.* The ultimate sales price was low—approximately 11% of market value. *Id.* But the Nevada Supreme Court held that the statutory violation nevertheless did not constitute fraud, unfairness, or oppression that affected the sale: "Significantly, there is no evidence in the record to suggest that [the bank] ever tried to tender payment in any amount to the HOA, much less that [the bank] was confused or otherwise prejudiced by the notice of sale." *Id.*

Here, the purchase price was approximately 8% of the market value of the property. Because of that low purchase price, U.S. Bank must produce only slight evidence of fraud, unfairness, or oppression that affected the sale. *Id.* at 648.

U.S. Bank points to the mortgage-savings clause in the CC&Rs as evidence of unfairness that affected the sale. The

clause stated, contrary to Nevada law, that any lien for unpaid assessments would be subordinate to any lien by the first deed of trust. The mortgage-savings clause was void as a matter of Nevada law. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 419 (Nev. 2014) (en banc) (holding that a similar mortgage-savings clause was void). The clause plainly conflicted with Nevada Revised Statutes section 116.3116(2), which required liens for unpaid assessments to have superpriority status. *Id.* Additionally, section 116.1104 provided that the priorities cannot be modified by agreement. *Id.*

The mortgage-savings clause also was void under the terms of the CC&Rs themselves. A provision of the CC&Rs expressly stated that, if any provision conflicted with chapter 116 of the Nevada Revised Statutes, then "such offending Declaration provision shall be automatically deemed modified or severed herefrom."

U.S. Bank nevertheless urges us to conclude that the mortgage-savings clause constituted unfairness that affected the sale. In theory, had U.S. Bank read the mortgage-savings clause in isolation and without regard to Nevada law, the clause could have misled U.S. Bank into believing that the foreclosure sale would not extinguish the first deed of trust. Even assuming that those theoretical concerns could constitute sufficient unfairness that would justify setting aside a sale in different circumstances, U.S. Bank has not introduced any evidence whatsoever in this case that the mortgage-savings clause *affected this sale*. For example, there is no evidence that U.S. Bank or anyone else relied on the mortgage-savings clause in deciding whether to bid on the property or whether to pay off the lien. *Cf. U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 444 P.3d 442, 447 (Nev. 2019) (describing testimony by U.S. Bank's collection

officer that, had U.S. Bank known of a default, U.S. Bank "would have paid the lien off"). As the Nevada Supreme Court said when facing similar circumstances in *Shadow Canyon*, "there is no evidence in the record to suggest that . . . [U.S. Bank or any other potential buyer] was confused or otherwise prejudiced by" the mortgage-savings clause. 405 P.3d at 650.

In unpublished decisions, the Nevada Supreme Court repeatedly has rejected the very same argument that U.S. Bank advances here, in materially indistinguishable circumstances. For example, in *U.S. Bank Nat'l Ass'n as Trustee for Benefit of HarborView 2005–08 v. Vistas Homeowners Ass'n*, 432 P.3d 191, 2018 WL 6617731 (Nev. 2018) (unpublished), the Nevada Supreme Court held:

> As evidence of unfairness, appellants first contend that the covenants, conditions, and restrictions (CC&Rs) include a protective covenant, under which an HOA foreclosure does not extinguish a first deed of trust. We are not persuaded that this evidence constitutes unfairness. Appellants have not presented any evidence that potential bidders were misled by the CC&Rs' protective covenant and that bidding was chilled. Moreover, we must presume that any such bidders also were aware of NRS 116.1104, such that they were not misled. *See Smith v. State*, 151 P. 512, 512 (Nev. 1915) ("Every one is presumed to know the law and this presumption is not even rebuttable.").

*Id.* at \*1 (citation format modified) (footnote omitted). The Nevada Supreme Court has reached the same conclusion in at least nine additional unpublished decisions.[3]

U.S. Bank focuses on footnote 11 in *Shadow Canyon*, in which the Nevada Supreme Court listed five examples of "irregularities that may rise to the level of fraud, unfairness, or oppression," and the court cited a case or two per example. *Shadow Canyon*, 405 P.3d at 648 n.11. The second example in the list is "an HOA's representation that the foreclosure sale will not extinguish the first deed of trust, *see ZYZZX2 v. Dizon*, No. 2:13-cv-1307, 2016 WL 1181666, at \*5 (D. Nev. Mar. 25, 2016)." *Shadow Canyon*, 405 P.3d at 648 n.11. The district court's unpublished decision in *Dizon* involved a mortgage-savings clause *and* an individualized letter, mailed to the relevant bank and to other potential buyers, stating that the specific sale at issue would not extinguish the first deed of trust. *Dizon*, 2016 WL 1181666, at \*5. The district court held that the misrepresentations constituted

---

[3] *Residential Credit Sols., Inc. v. TRP Fund IV, LLC*, 457 P.3d 245, 2020 WL 762637, at \*2 n.3 (Nev. Feb. 14, 2020) (unpublished); *Nationstar Mortg., LLC v. BDJ Invs., LLC*, 452 P.3d 410, 2019 WL 6208548, at \*2 (Nev. Nov. 20, 2019) (unpublished); *Wells Fargo Bank, N.A. v. Gabriel*, 451 P.3d 898, 2019 WL 6119271, at \*1 (Nev. Nov. 15, 2019) (unpublished); *SFR Invs. Pool 1, LLC v. Nationstar Mortg., LLC*, 451 P.3d 548, 2019 WL 6119435, at \*2 (Nev. Nov. 15, 2019) (unpublished); *Bank of N.Y. Mellon v. Saticoy Bay LLC Series 4330*, 437 P.3d 167, 2019 WL 1244783, at \*1 n.3 (Nev. March 15, 2019) (unpublished); *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 433 P.3d 263, 2019 WL 292823, at \*1 (Nev. Jan. 17, 2019) (unpublished); *Bank of America, N.A. v. Saticoy Bay LLC Series 716*, 433 P.3d 262, 2019 WL 292773, at \*2 (Nev. Jan. 17, 2019) (unpublished); *PennyMac Corp. v. SFR Invs. Pool 1, LLC*, 425 P.3d 719, 2018 WL 4413612, at \*2 (Nev. Sept. 14, 2018) (unpublished); *First Horizon Home Loans v. Entrust Grp., Inc.*, 422 P.3d 710, 2018 WL 3544967, at \*2 n.2 (Nev. July 20, 2018) (unpublished).

unfairness, and the court held, without elaboration, that the misrepresentations "*resulted in* an unreasonably low sale price." *Id.* (emphasis added).

U.S. Bank reasons as follows. First, by citing *Dizon*, the Nevada Supreme Court necessarily adopted and incorporated *Dizon*'s analysis in full. Second, because *Dizon* involved a mortgage-savings clause and because the district court in *Dizon* held that there was unfairness that affected the sale, the Nevada Supreme Court would adopt the rule that any mortgage-savings clause is necessarily an unfairness that affects any foreclosure sale. We disagree with both steps of the analysis.

At the first step, we read the *Shadow Canyon* footnote in a straightforward manner. The Nevada Supreme Court listed examples of irregularities that, depending on the circumstances, "*may* rise to the level of fraud, unfairness, or oppression." *Shadow Canyon*, 405 P.3d at 648 n.11 (emphasis added). For each example, the court cited a case or two in which another court had held that the irregularity constituted fraud, unfairness, or oppression. *Id.* But nothing suggests that the court necessarily agreed with all aspects of the cited cases and intended to adopt all the decisions wholesale.[4]

---

[4] Courts often cite a case or legal source to illustrate a narrow point without adopting the cited case's analysis in full. Indeed, *Shadow Canyon* itself made this point. In an earlier case, the Nevada Supreme Court had cited a section of the Restatement (Third) of Property, but *Shadow Canyon* rejected the bank's argument that the court had adopted the Restatement's standard: "The citation to the Restatement in [the earlier case] cannot reasonably be construed as an implicit adoption" of the Restatement's rule. *Shadow Canyon*, 405 P.3d at 647. The same

With respect to the citation of *Dizon* specifically, nothing suggests that—by citing an unpublished order, without parenthetical or other elaboration, in a footnote, in a long list of examples—the court adopted all of *Dizon*'s analysis. The most natural reading of the footnote's citation to *Dizon* is that *Dizon* is an example of a case in which a court found that, in the *totality* of the circumstances, an HOA's misleading representations constituted unfairness. *Id.* We do not read the footnote's citation to *Dizon* as adopting *Dizon*'s entire analysis, particularly with respect to other issues such as whether the HOA's representations in that case affected the sale and what evidence is required to establish an effect on the sale.

At step two of the analysis, even if we assume that the Nevada Supreme Court intended in *Shadow Canyon* to adopt all of *Dizon*'s analysis, we readily conclude that the Nevada Supreme Court would distinguish this case from *Dizon*. As noted above, *Dizon* concerned a mortgage-savings clause *and* a letter affirmatively stating that the *specific* sale at issue would not extinguish the first deed of trust. *Dizon*, 2016 WL 1181666, at *5. By representing that the specific sale at issue would not extinguish the first deed of trust, the letter informed the bank, in effect, that the homeowners association's lien contained only charges with subpriority status and contained no charges with superpriority status. The bank therefore had no reason to protect its interest because, according to the letter, the bank's interest was not threatened. That type of individualized affirmative misrepresentation is clearly unfair. *See Lahrs Family Tr. v. JPMorgan Chase Bank, N.A.*, 446 P.3d 1157, 2019 WL 4054161, at *2 (Nev. August 27, 2019) (unpublished)

---

analysis applies here: the citation to *Dizon* cannot reasonably be construed as an implicit adoption of all of *Dizon*'s reasoning.

(holding that a letter similar to the one sent in *Dizon* constituted unfairness and explaining that, "at the very least, the letter suggested that the HOA was seeking to foreclose only on the subpriority portion of the lien, thereby lulling [the bank] into believing its senior lien was not in jeopardy"). By contrast, the mortgage-savings clause was void as a matter of law and did not, by itself, constitute unfairness that affected the sale.

Once again, unpublished decisions by the Nevada Supreme Court confirm our interpretation of *Shadow Canyon*'s citation of *Dizon*. Time and again, the Nevada Supreme Court has distinguished *Dizon* for the reasons given above. For example, in *HarborView*, 2018 WL 6617731, after holding that no prospective buyer could have been misled by the mortgage-savings clause, the court held in a footnote:

> In this respect, to the extent it is persuasive, *ZYZZX2 v. Dizon*, 2016 WL 1181666 (D. Nev. 2016), is distinguishable because in addition to the CC&Rs' covenant, the HOA sent a letter to the deed of trust beneficiary affirmatively misrepresenting to the beneficiary that it would not need to take any action to protect its deed of trust.

*HarborView*, 2018 WL 6617731, at *1 n.2 (citation format modified); *accord Residential Credit Sols.*, 2020 WL 762637, at *2 n.3; *BDJ Invs.*, 2019 WL 6208548, at *2 n.4; *Gabriel*, 2019 WL 6119271, at *1 n.3; *SFR Invs. Pool 1, LLC*, 2019 WL 6119435, at *2 n.4; *Saticoy Bay LLC Series 4330*, 2019 WL 1244783, at *1 n.3; *JPMorgan Chase*, 2019 WL 292823, at *1 n.3; *Saticoy Bay LLC Series 716*, 2019 WL 292773, at *2 n.5; *PennyMac Corp.*, 2018 WL 4413612,

at *2 n.5; *First Horizon*, 2018 WL 3544967, at *2 n.2; *see also U.S. Bank, N.A. v. S. Highlands Cmty. Ass'n*, 2019 WL 1429524, at *6 (D. Nev. March 29, 2019) ("In fact, the Court that decided [*Dizon*] has since clarified that its holding hinged upon the HOA's representations in its letter to Wells Fargo." (citing *Bayview Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No. 2:14-cv-1875, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017)))), *appeal docketed*, No. 19-15918 (9th Cir. May 1, 2019).

For all of those reasons, we conclude that, under Nevada law, the mortgage-savings clause did not constitute fraud, unfairness, or oppression that affected the sale.

The dissenting opinion suggests that we should certify the question to the Nevada Supreme Court. We respectfully decline the suggestion. Our role in a diversity case is to "predict how the state high court would resolve" a question in a published decision. *Albano*, 634 F.3d at 530 (internal quotation marks omitted). As that legal standard makes clear, we regularly decide issues of state law without certifying questions to the state's highest court. Neither before the district court nor before us (until we sua sponte raised the question of certification) did either party request certification. Instead, the parties asked both the district court and us to resolve the question directly. Although we may certify a question sua sponte, "[w]e invoke the certification process only after careful consideration and do not do so lightly." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (en banc) (order) (internal quotations marks omitted). "In deciding whether to exercise our discretion, we consider: (1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) the

spirit of comity and federalism." *Id.* (internal quotation marks omitted).

Several of those factors weigh heavily against certification here. In our view, the answer to the legal issue is clear under the Nevada Supreme Court's published decisions, including *Shadow Canyon*. Likely because the answer is clear, the Nevada Supreme Court repeatedly and consistently has resolved the precise issue many times in reasoned, unpublished decisions. No further guidance is needed.

Nor is the issue "new." *Murray*, 924 F.3d at 1072. In the past six years, the issue has recurred repeatedly both in federal court and in state court. No federal court has suggested that the issue requires certification, and the state courts have deemed the question unworthy of publication.

The issue also lacks "broad application." *Id.* The issue affects only a dwindling number of cases, because six years have now passed since the Nevada legislature significantly revised the statutory scheme. *See, e.g.*, *Arlington W.*, 920 F.3d at 622 n.1 ("The Nevada legislature made significant amendments to these provisions in 2015."). Once the remaining few cases in the pipeline are resolved, the issue has no continuing vitality.[5]

---

[5] The 2015 amendments added procedural protections for holders of first deeds of trust. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 200 F. Supp. 3d 1141, 1169 (D. Nev. 2016) (describing the effect of the amendments); *Christiana Tr. v. K&P Homes*, No. 2:15-cv-01534, 2018 WL 456020, at *2–*3 (D. Nev. Jan. 16, 2018) (unpublished) (describing the legislative history). HOAs undoubtedly will continue to foreclose on delinquent homeowners. But the 2015 amendments make it extremely unlikely that the pertinent issue—a foreclosure's

Next, although "comity and federalism," *id.*, often will support a decision to certify, those considerations point in the opposite direction here. The Nevada Supreme Court repeatedly has answered the precise question in reasoned decisions, while determining that publication is not a wise expenditure of its limited judicial resources. As a matter of comity and federalism, we respect that considered determination.

Finally, we note that the dissenting opinion fundamentally misunderstands the nature of a federal court's decision in a diversity case. A resolution on the merits neither "usurps the authority of the Nevada Supreme Court" nor "deprives the Nevada Supreme Court of the opportunity to develop its own jurisprudence." Dissent at 20, 33. The Nevada Supreme Court remains free to resolve the legal issue in a future published decision, and the federal courts must respect that decision. *See, e.g.*, *Arlington W.*, 920 F.3d at 623–24 (holding that our earlier decision on a question of Nevada law "no longer controls the analysis" because "the Nevada Supreme Court later rejected [our] interpretation of the Nevada statutory scheme").

---

extinguishing the first deed of trust despite statements in CC&Rs—will arise under the amended statute with any frequency, if at all. Notably, the dissenting opinion cites for the contrary contention only an entirely inapposite case and a newspaper article describing foreclosures with no mention of first deeds of trust or CC&Rs. *See* Dissent at 35 (citing *Bank of Am., N.A. v. Hernandez*, 2:17-cv-03108, 2019 WL 1442184, at *4 (D. Nev. Mar. 31, 2019), which did not concern CC&Rs and where the bank successfully protected its interest by paying the superpriority amount).

## C.  U.S. Bank's Remaining Arguments

U.S. Bank's remaining arguments do not persuade us.

No unfairness arose from the HOA's processing of payments.  Bank of America's payment to the HOA fully satisfied the second lien, and the HOA later recorded the third lien.  Neither U.S. Bank nor another entity requested—at any time before the foreclosure—that the HOA apply a portion of Bank of America's earlier payment to satisfy the third lien.

We decline U.S. Bank's invitation to remand this case to allow U.S. Bank to raise, for the first time, the argument that tender was futile and to present evidence on that point.  The Nevada Supreme Court recently discussed futility of tender in *7510 Perla Del Mar Ave. Tr. v. Bank of Am. N.A.*, 458 P.3d 348 (Nev. 2020) (en banc).  But we see no reason to excuse U.S. Bank's forfeiture of the issue.  *See Corte Madera*, 962 F.3d at 1109 (declining to permit the belated argument because "the futility-of-tender concept discussed in *Perla Del Mar* is nothing new").

Finally, the notice at issue here, which complied with the statutory requirements, did not violate due process.  *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1217–18 (9th Cir. 2020).

**AFFIRMED.**

IKUTA, Circuit Judge, dissenting:

The majority here usurps the authority of the Nevada Supreme Court by deciding an important and open issue of Nevada state law. This appeal raises the question whether a court can set aside a foreclosure sale where: (1) a homeowner's association (HOA) foreclosed on a lien for a few thousand dollars in unpaid assessments and by doing so extinguished a first deed of trust securing a loan for hundreds of thousands of dollars, (2) the foreclosure sales price was grossly inadequate compared to the value of the property; and (3) there was evidence of unfairness, fraud or oppression due to the HOA's promise not to foreclose in that exact situation. Instead of certifying the question — or at the least, following the direction of a published Nevada Supreme Court opinion on this issue — the majority elects to follow conflicting unpublished decisions, while trying to explain away the inconsistency between the two. Because resolving such conflicts is the prerogative of the highest state court, we should have shown judicial humility and certified this question, which has "significant policy implications" for those with property interests in Nevada, to the Nevada Supreme Court. *See Perez-Farias v. Glob. Horizons, Inc.*, 668 F.3d 588, 593 (9th Cir. 2011) (per curiam).

I

In failing to defer to the Nevada Supreme Court by certifying the question raised by this appeal, the majority interferes with the Nevada Supreme Court's prerogative to resolve a recurring legal issue in the area of foreclosures and priorities relating to common interest communities. A brief overview of this unfolding story is necessary.

In 1991, the Nevada legislature adopted the Uniform Common Interest Ownership Act, a model law created by

the Uniform Law Commission to regulate HOAs. *SFR Invs. Pool 1 v. U.S. Bank*, 130 Nev. 742, 744 (2014) (en banc) (*SFR I*). One part of this act, which Nevada adopted, was NRS 116.3116 (HOA lien statute). Subsection 1 of this statute allows the HOA to place a lien on its homeowners' residences for any delinquent HOA assessment. *See* NRS 116.3116(1).[1] Subsection 2 gives that HOA lien priority over most other liens. *See* NRS 116.3116(2).[2] While the

---

[1] At the time of the foreclosure sale in this case, NRS 116.3116(1) provided:

> The association has a lien on a unit for any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due. Unless the declaration otherwise provides, any penalties, fees, charges, late charges, fines and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3102 are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.

NRS 116.3116(1) (2013). In 2015, the legislature amended this provision to allow HOAs to add the costs of collecting past due obligations to the lien amount. NRS 116.3116(1) (2015).

[2] NRS 116.3116(2) provided:

> A lien under this section is prior to all other liens and encumbrances on a unit except:
>
> (a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative,

liens and encumbrances which the association creates, assumes or takes subject to;

(b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent; and

(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien. If federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien, the period during which the lien is prior to all security interests described in paragraph (b) must be determined in accordance with those federal regulations, except that notwithstanding the provisions of the federal regulations, the period of priority for the lien must not be less than the 6 months immediately preceding institution of an action to enforce the lien. This subsection does not affect the priority of

HOA's lien does not have priority for all costs and assessments, the portion of the lien securing nine months of HOA dues and maintenance and nuisance-abatement charges does have priority over a first deed of trust. *See* NRS 116.3116(2)(b). The portion of the HOA assessment with priority over the first deed of trust is referred to as the "superpriority" lien. *See SFR I*, 130 Nev. at 745.

The HOA's ability to impose a superpriority lien on residences in the common interest community and then foreclose on the lien did not raise any controversies for many years. Indeed, in order to induce lenders to participate in financing the sale of a residence within a common interest community, HOAs typically included mortgage protection clauses in their covenants, conditions, and restrictions (CC&Rs). These mortgage protection clauses stated that the HOA would subordinate its superpriority lien to the bank's first deed of trust. As a result, HOAs did not generally foreclose on superpriority liens. *See Letter from Common Int. Comm., Real Prop. Section, State Bar of Nev., to Joint Ed. Bd. for Unif. Real Prop. Acts* 9 (Oct. 31, 2013) [hereinafter *CIC Letter*].[3] Rather, lenders brought foreclosure actions when homeowners fell behind on their payments on the first deed of trust, and then paid off the HOA's lien from the proceeds of the foreclosure sale. *See id.*

---

> mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association.

NRS 116.3116(2) (2013).

[3] Available at https://www.nvbar.org/wp-content/uploads/8631043 _1Comment-Letter-to-JEB.pdf (last accessed Dec. 13, 2020).

This landscape changed after the 2008 economic downturn, which severely affected the Nevada housing market. To respond to the crisis, the Nevada legislature passed AB 284 in 2011. *Id.* at 9–10; 2011 Nev. Laws Ch. 81 (AB 284). Among its other provisions, AB 284 required lenders to provide a sworn affidavit before pursuing non-judicial foreclosure against a homeowner, and increased the criminal penalties for "robo-signing" foreclosure documents. *See* NRS 107.080 (2011); NRS 205.395 (2011). In response to these new rules, lenders brought fewer foreclosure actions. *See CIC Letter* at 9. As a result, HOAs initiated their own foreclosures of superpriority liens in order to recover unpaid assessments. *Id.*

During this period, it was unclear whether the HOA's foreclosure of its superpriority lien extinguished the lender's first deed of trust. Nevada's state courts and federal district courts in Nevada were divided on this issue. *See SFR I*, 130 Nev. at 747. Some courts held that a foreclosure sale on the HOA superpriority lien extinguished all junior interests, including the first deed of trust, *id.* (citing *7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013)). Other courts held that the superpriority lien merely established a right to payment. According to this view, the proceeds from a foreclosure sale must be used to pay off the superpriority lien before being applied to the first deed of trust, but the HOA's lien itself could not extinguish the deed of trust. *Id.* (citing *Bayview Loan Serv., LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1226 (D. Nev. 2013)).

In the absence of a definitive legal ruling, "the Nevada real estate community [did] not operate as if HOA foreclosures extinguish first mortgages recorded before the HOA delinquency arises." *See Bayview*, 962 F. Supp. 2d

at 1226. Investors like SFR bought residences at HOA foreclosure sales for roughly the amount of the HOA's liens, which were "tiny fractions of [the residences'] fair market value." *Id.* As *Bayview* observed, if "investors believed that HOA foreclosures extinguished first mortgages," the homes would have instead sold for amounts significantly closer to their fair market value. *Id.*

In 2014, the Nevada Supreme Court resolved the division among the state and federal courts by reaching the unexpected conclusion that the HOA's foreclosure on its superpriority lien did extinguish a first deed of trust. *See SFR I*, 130 Nev. at 747–48. The court held that because the HOA lien statute does not speak in terms of payment priorities, but instead "states that the HOA 'lien . . . is *prior to* other liens,'" it establishes a true priority lien that extinguishes the first deed of trust. *Id.* at 748 (quoting NRS 116.3116(2)). The court reasoned that this interpretation was not unfair to lenders because they could easily pay off the superpriority lien to avoid the loss of their investments. *Id.* at 750. The court rejected the argument that the ubiquitous mortgage protection clause in CC&Rs for common interest communities could waive the effect of the superpriority lien. *Id.* at 757–58. Relying on NRS 116.1104, which states that the provisions of chapter 116 "may not be varied by agreement, and rights conferred by it may not be waived," the court indicated that the HOA's waiver of its superpriority lien was void and unenforceable. *Id. SFR I* did not, however, consider whether a foreclosure sale could be set aside if it were commercially unreasonable. *Id.* at 756 n.6.

*SFR I* was a windfall to investors purchasing residences at HOA foreclosure sales. According to the Nevada Association of Realtors, during the period from January

2013 through July 2016, investors purchased residences at HOA foreclosure sales in Clark and Washoe Counties (Nevada's most populous counties) at a 42 and 90 percent discount, respectively. *See* LIED Institute for Real Estate Studies at UNLV, *Report of Nevada Association of Realtors On Nevada's Homeowners' Association Super Priority Lien*, *Appendix III* 56–57 (2017).[4]

Unsurprisingly, *SFR I* was controversial. The court's interpretation of the HOA lien statute made it more difficult to obtain a loan for a home governed by an HOA. *Id.* at *Appendix I* 40; Federal Housing Finance Agency, *Statement on Super Priority Liens* (Dec. 22, 2014).[5] Moreover, we concluded that NRS 116.3116, as interpreted by *SFR I*, did not apply to the Federal National Mortgage Association (Fannie Mae) or the Federal Home Loan Mortgage Corporation (Freddie Mac) because it was preempted by the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3). *See Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1140–41 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1618 (2019).

In 2015, the Nevada Legislature responded to these concerns by modifying the HOA foreclosure scheme to create a pre-foreclosure sale payoff option and a 60-day right of redemption for first deed of trust holders. *See* NRS 116.31166(3). In addition, the legislature strengthened the

---

[4] Available at http://hoasuperprioritylien.com/Appendix-III.pdf and https://hoasuperprioritylien.com/methodology-appendices/ (last accessed Dec. 13, 2020).

[5] Available at https://www.fhfa.gov/mobile/Pages/public-affairs-detail.aspx?PageName=Statement-of-the-Federal-Housing-Finance-Agency-on-Certain-Super-Priority-Liens.aspx (last accessed Dec. 29, 2020).

scheme's notice requirements, mandating that HOAs send all relevant foreclosure notices to the first deed of trust holder, and requiring that those notices include the amount of the HOA lien with superpriority status.   *See* NRS 116.31162.

The aftermath of *SFR I* also prompted the Nevada Supreme Court to refine its interpretation of the HOA lien statute in a manner that mitigated some of the harshest impacts on lenders.  Although concluding that "inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a . . . sale," *Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp, Inc.*, 132 Nev. 49, 58 (2016) (en banc) (citation omitted), the Nevada Supreme Court clarified that "where the inadequacy of the price is great, a court may grant relief based on *slight* evidence of fraud, unfairness, or oppression." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 133 Nev. 740, 741 (2017) (emphasis added); *see also id.* at 749 ("[I]t is universally recognized that . . . where the inadequacy is palpable and great, very slight additional evidence of unfairness or irregularity is sufficient to authorize the granting of the relief sought.") (quoting *Golden v. Tomiyasu*, 79 Nev. 503, 515–16 (1963)).  *Shadow Canyon* held that the inadequacy of the sales price at the foreclosure sale should "be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression."  *Id.* at 749.

To guide courts and litigants going forward, *Shadow Canyon* included a nonexhaustive list of "irregularities that may rise to the level of fraud, unfairness, or oppression." *Id.* at 749 n.11.  Among these irregularities was "an HOA's representation that the foreclosure sale will not extinguish the first deed of trust."  *Id.* (citing *ZYZZX2 v. Dizon*,

No. 2:13-cv-1307, 2016 WL 1181666, at *5 (D. Nev. Mar. 25, 2016)). *Dizon*, cited with approval in *Shadow Canyon*, set aside a foreclosure sale because the HOA's mortgage protection clause in its CC&Rs represented to the general public that the HOA's foreclosure would not extinguish the first deed of trust. *Dizon*, 2016 WL 1181666, at *5. The HOA had also sent a letter to the lender and other interested parties making the same representation. *Id. Dizon* reasoned that "[t]he association's notice to [the lender] and the information it conveyed to potential buyers was legally inaccurate and resulted in an unreasonably low sale price." *Id.* "This defect in sale, coupled with a disproportionately low price, demonstrates that the foreclosure was unfair and commercially unreasonable." *Id.*

In addition to holding that courts could set aside foreclosure sales where an inadequate price is accompanied by "slight evidence" of irregularities, the Nevada Supreme Court also issued opinions after *SFR I* declining to hold lenders to rigid procedural requirements. For example, the Nevada Supreme Court held "that a first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 134 Nev. 604, 605 (2018) (en banc) (*Diamond Spur*). Further, the court held that where the HOA's accounting did not plainly establish that the residence had any charges for maintenance or nuisance abatement, the lender's tender of nine months of unpaid assessments discharged the superpriority amount. *Id.* at 607. In addition, the lender's tender did not have to be unconditional, but could include conditions on which it had the right to insist, such as the condition that "acceptance of the tender would satisfy the superpriority portion of the lien," thus preserving the lender's interest in the property. *Id.* Finally, the Nevada

Supreme Court held that formal tender of the superpriority amount to the HOA's agent is excused when evidence shows that the HOA's agent had a known policy of rejecting such payments.  *See 7510 Perla Del Mar Ave Trust v. Bank of Am., N.A.*, 136 Nev. 62, 66–67 (2020) (en banc).

## II

This history of Nevada law provides the backdrop to the open legal question raised here:  whether U.S. Bank is entitled to equitable relief as a matter of Nevada state law. To understand the importance of this question—and why the majority errs in answering the question itself instead of deferring to the Nevada Supreme Court—it is helpful to understand the facts of this case in their historical context.

## A

In 2005, the original lender (now U.S. Bank) made a loan of some $479,000 to Tricia Thoen to buy the residence at 6353 Ebony Legends Avenue in Las Vegas, which was subject to the CC&Rs issued by White Horse Estates Homeowners Association (White Horse).  The CC&Rs expressly stated that an HOA superpriority lien would not take priority over a lender's first deed of trust: "no lien created [by the HOA] shall defeat or render invalid the rights of a Beneficiary under any Recorded First Deed of Trust encumbering a Unit, made in good faith and for value."

In 2010, a few years after the 2008 housing crisis, White Horse recorded its first notice of delinquent assessment lien of $1100, which the lender subsequently paid.  In 2012, the lender paid a lien of $3854 pursuant to White Horse's second notice of delinquent assessment.  In 2013, White Horse recorded a third notice of delinquent assessment lien in the amount of $1429.  When the lender failed to pay this lien,

White Horse foreclosed on the residence in November 2013. At the foreclosure sale, SFR purchased the residence, which was then valued at some $309,000, for a mere $25,000.

At the time of the foreclosure sale, the Nevada Supreme Court had not yet decided whether an HOA's foreclosure of its superpriority lien extinguished a lender's first deed of trust. *See supra* Part I. After *Shadow Canyon* resolved this issue in favor of HOAs, U.S. Bank brought an action for equitable relief, arguing that the court should set aside the sale because the sale price was grossly inadequate, and the HOA acted unfairly in light of the mortgage protection clause in its CC&Rs. The district court rejected U.S. Bank's claim, holding that, as a matter of law, the mortgage protection clause was not evidence of fraud, unfairness or oppression sufficient to set aside the sale.

B

The district court's conclusion, which the majority echoes, is not supported by Nevada law. The Nevada Supreme Court has made clear that equitable relief may be available in the circumstances present here. Specifically, a foreclosure sale may be set aside if it results in a grossly inadequate price and there is "slight evidence" of fraud, unfairness, or oppression affecting the sale. *See Shadow Canyon*, 133 Nev. at 741. There is no doubt that SFR paid a grossly inadequate price of $25,000 for a home valued at over $308,000, approximately eight percent of the home's total value. And *Shadow Canyon* supports U.S. Bank's argument that it has shown "slight evidence" of fraud, unfairness or oppression. *See id.* at 749 n.11. As in *Dizon*, White Horse included a mortgage protection clause which "represented to both the general public as well as [U.S. Bank] that the association's foreclosure would not extinguish the first deed of trust." *See Dizon*, 2016 WL

1181666, at *5.  This representation was legally inaccurate. *See SFR I*, 130 Nev. at 757–58.  And as explained in *Bayview*, such legally inaccurate information necessarily resulted in an unreasonably low sale price, because if investors believed that HOA foreclosures extinguished first deeds of trust, they would have paid significantly more for the residence than what the residence ultimately sold for. *See* 962 F. Supp. 2d at 1226.  Although the HOA in *Dizon* made misrepresentations in both the CC&Rs and the letter, and White Horse made misrepresentations only in the CC&Rs, neither *Dizon* nor *Shadow Canyon* suggested that this distinction had any significance.  *See Shadow Canyon*, 133 Nev. at 749 n.11; *Dizon*, 2016 WL 1181666, at *5. Given *Shadow Canyon*'s approving citation to *Dizon*, it is reasonable to conclude that the HOA's use of a mortgage protection clause constitutes slight evidence of fraud, unfairness, or oppression sufficient to set aside the sale. *See Shadow Canyon*, 133 Nev. at 749 n.11.

In reaching the opposite conclusion, the majority invents a new rule: that there must be evidence that the lender relied on the mortgage protection clause before it can serve as evidence of fraud, unfairness or oppression.  Maj. at 10.  To support this holding, the majority purports to rely on *Resources Group, LLC v. Nevada Association Services*, Maj. at 8, but that opinion provides no help because it did not consider an HOA's mortgage protection clause or suggest that the lender had to show reliance on an HOA's misrepresentation in order to present evidence of fraud, unfairness or oppression.  135 Nev. 48, 55–57 (2019).  In fact, no Nevada decision imposes such a reliance requirement in this context.  To the contrary, *Shadow Canyon* relied on *Dizon*, which did not require evidence that potential bidders relied on the misleading information in the letter or the CC&Rs, or that there was otherwise an effect on

the sale. *See Shadow Canyon*, 133 Nev. at 749 n.11; *Dizon*, 2016 WL 1181666, at \*5.

The majority also relies on unpublished Nevada Supreme Court cases, Maj. at 15–16, but these too provide little support because they are in tension with the Nevada Supreme Court's published decision in *Shadow Canyon*. For instance, *U.S. Bank National Ass'n as Trustee for Benefit of HarborView 2005–08 v. Vistas Homeowners Ass'n*, stated that evidence that the CC&Rs included a mortgage protection clause did not constitute evidence of unfairness, 432 P.3d 191, 2018 WL 6617731 (Nev. 2018) (unpublished), a conclusion that clearly clashed with *Shadow Canyon*'s citation to *Dizon* to support the contrary proposition. Implicitly recognizing this tension, *Vistas Homeowners* stated that *Dizon* "is distinguishable because in addition to the CC&Rs' covenant, the HOA sent a letter to the deed of trust beneficiary affirmatively misrepresenting to the beneficiary that it would not need to take any action to protect its deed of trust." 2018 WL 6617731 at \*1 n.2. But *Vistas Homeowners* provided no explanation as to why this bare factual distinction—*Dizon* involved misleading CC&Rs *and* a misleading letter while *Vistas Homeowners* involved only misleading CC&Rs—made any material difference to its analysis, presumably leaving such a reasoned analysis to a subsequent published decision.

The majority attempts to provide the missing reasoning, but falls short. According to the majority, a letter promising not to extinguish a first deed of trust is unfair, but a mortgage protection clause promising the same thing is not, because (1) a letter informs the lender that the HOA did not have a superpriority lien on the residence, Maj. at 14; and (2) a mortgage protection clause is "void as a matter of law" and therefore "did not, by itself, constitute unfairness that

affected the sale." Maj. at 15. These arguments are unpersuasive. In none of the unpublished opinions cited by the majority did the letter at issue inform the lender that the HOA's lien "contained only charges with subpriority status." Maj. at 14–16. The majority entirely fabricates this factual claim. At most, one unpublished opinion indicated that an HOA's letter stating that the HOA's lien was junior to the first deed of trust raised the inference that "the HOA was seeking to foreclose only on the subpriority portion of the lien." *Lahrs Family Tr. v. JPMorgan Chase Bank, N.A.*, 446 P.3d 1157, 2019 WL 4054161 (Nev. 2019) (unpublished). But the exact same inference is raised by a covenant in the CC&Rs that "no lien created [by the HOA] shall defeat or render invalid the rights of a Beneficiary under any Recorded First Deed of Trust." The majority's second distinction (that a mortgage protection clause is void as a matter of law) also fails, because a letter from an HOA to a bank stating that it will not extinguish the first deed of trust is likewise void as a matter of law. Maj. at 14–15. Under NRS 116.1104, no purported waiver of the right to foreclose a first deed of trust is enforceable.

## C

Given this lack of clarity, the majority's election to decide this case by distinguishing *Shadow Canyon* and *Dizon* and relying on unpublished opinions deprives the Nevada Supreme Court of the opportunity to develop its own jurisprudence and resolve significant questions of state law.

The majority's unpersuasive attempts to paper over the tension between the Nevada Supreme Court's published and unpublished opinions is improper. "In considering the state court opinion, we are not free, of course, to craft a different analysis by which the state court could have resolved the case before it, but for whatever reasons chose not to use."

*Cherry v. Steiner*, 716 F.2d 687, 691 (9th Cir. 1983). The question whether evidence of a grossly inadequate sales price and misleading CC&Rs justifies setting aside a foreclosure sale should be answered by the Nevada Supreme Court, not by federal courts. We should not look behind the reasoning of the Nevada Supreme Court or speculate about why it cited *Dizon* or chose to distinguish *Shadow Canyon* in unpublished dispositions, *cf.* Nev. R. App. Proc. 36(c)(1)(B) (indicating that only published dispositions, not unpublished dispositions, can alter, modify or significantly clarify a rule of law). Instead, we should certify the question. As the Supreme Court has pointed out, this exercise of judicial humility "in the long run save[s] time, energy, and resources." *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

The Nevada Supreme Court will accept a certified question when the answer may "be determinative" of part of the federal case, there is no controlling Nevada precedent, and the answer will help settle important questions of Nevada law. *See Volvo Cars of N. Am., Inc. v. Ricci*, 122 Nev. 746, 749–50 (2006); Nev. R. App. Proc. 5(a). Here, the question presented by this case meets all these factors. It is determinative of whether to set aside the sale. *See Shadow Canyon*, 133 Nev. at 749 n.11. There is no controlling Nevada precedent, but instead only unpublished decisions that are in tension with *Shadow Canyon*. Finally, the answer will help settle an important legal question because it will resolve the tension between *Shadow Canyon*, which says that representations like a mortgage protection clause can cause slight unfairness, and the unpublished cases, which have subsequently rejected this argument with little explanation. *Compare id.*, *with Vistas Homeowners*, 2018 WL 6617731 at *1.

This case also meets our own standard for certification. In deciding whether to certify a question to a state supreme court, we first examine whether the question presents important public policy ramifications that have not yet been resolved by the state court and whether the issue is new and substantial.  *See Murray v. BEJ Mins.*, *LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (en banc).  This is not a high bar; we recently certified to the Montana Supreme Court a question regarding whether dinosaur fossils constitute minerals under Montana law.  *Id.*  The question in this case has much broader applicability, given that the superpriority statute remains in effect and HOAs continue to initiate foreclosures based on it.  *See* NRS 116.3116; *see, e.g.*, *Bank of Am., N.A. v. Hernandez*, No. 2:17-CV-03108 RFB CWH, 2019 WL 1442184, at *4 (D. Nev. Mar. 31, 2019) (involving an HOA foreclosure sale based on a superpriority lien in December 2016, after the Nevada Legislature amended the statute in 2015); *see also* Eli Segall*, Despite Foreclosure Freeze, HOAs Sending Default Notices*, *Las Vegas Review-Journal*, June 11, 2020.[6]  Nor is there any evidence that HOAs have amended their CC&Rs to remove their misleading covenants.  So long as HOAs continue to make misrepresentations to induce lenders to finance the purchase of residential properties, and continue to foreclose on superpriority liens on properties they then sell for a tiny fraction of their value, the question raised by this case will continue in importance.[7]

---

[6] Available at https://www.reviewjournal.com/business/housing/despite-foreclosure-freeze-hoas-sending-default-notices-2050802/  (last accessed Jan. 11, 2021).

[7] The majority claims that the 2015 amendments to the HOA foreclosure scheme, which now gives lenders a 60-day period to redeem

Finally, the spirit of comity and federalism compels our deference. *See Murray*, 924 F.3d at 1072. It is well understood that our publication of an opinion on a state law issue may, as a practical matter, be the final word on that issue. A state court may not have an opportunity to address that issue for years to come, particularly given that litigants who favor the federal view will strategize to have their cases heard in federal court. Here, for instance, buyers at HOA foreclosure sales may preemptively file quiet title actions in federal court against lenders holding first deeds of trust. *See, e.g.*, *SFR Invs. Pool 1, LLC v. Bank of Am., N.A.*, No. 2:19-CV-1534-JCM-DJA, 2020 WL 3106316, at *1 (D. Nev. June 11, 2020). The majority's refusal to certify the question here is contrary to the spirit of comity evinced in our case law; indeed, an en banc panel of our court recently vacated a three-judge panel decision for the sole purpose of certifying a question to a state supreme court—even though the question at issue concerned only dinosaur fossils. *See, e.g.*, *Murray v. BEJ Mins., LLC*, 908 F.3d 437, 439 (9th Cir. 2018), *on reh'g en banc*, 924 F.3d at 1070, *certified question answered*, 400 Mont. 135 (2020).

Because I would certify to the Nevada Supreme Court the question of whether White Horse's misleading CC&Rs

---

the property subject to a first deed of trust after a foreclosure, will make it "extremely unlikely" that the issue here will arise frequently in the future. Maj. at 17 & n.5; NRS 116.31166(3). But for the same reason so many lenders failed to tender the superpriority amounts in a timely manner, it is likely that many lenders will miss the 60-day window (or otherwise miss one of the many procedural requirements) for exercising their right of redemption. *See* NRS 116.31166(3). Such typical human error should not deprive a lender of whatever equitable rights it has under state law.

constitutes slight evidence of fraud, unfairness, or oppression affecting the sale, I dissent.