**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

OCT 15 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,

Plaintiff-Appellee,

v.

PENSKE TRUCK LEASING CO., L.P., a Delaware Limited Partnership; OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania Corporation,

Defendants-Appellants,

and

MELBA FERNANDEZ; DOES, 1 through 20, inclusive,

Defendants.

No.    20-55893

D.C. No.
2:20-cv-01342-SVW-PVC

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Submitted June 15, 2021[*]
Anchorage, Alaska

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: RAWLINSON, CHRISTEN, and R. NELSON, Circuit Judges.
Dissent by Judge RAWLINSON

In the district court, State Farm Mutual Automobile Insurance Co. sought declaratory relief establishing that Penske Truck Leasing Co. and Old Republic Insurance Co. (collectively, "Defendants") are required to provide primary liability coverage to L&L subject to a combined single liability limit of $750,000. We affirm the district court's order granting summary judgment to State Farm.

"We review de novo the district court's order granting summary judgment and its interpretation of state law." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015) (citations omitted). We view the evidence in the light most favorable to the party opposing the summary judgment motion. *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1124 (9th Cir. 2021). In interpreting California law, we follow the California Supreme Court's decisions. *Diaz*, 785 F.3d at 1329. If there is no applicable California Supreme Court decision, we rely on state appellate court opinions, statutes and treatises. *Id.*

We start with the language of the Rental Agreement. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 776 (9th Cir. 2009). "The clear and explicit meaning of the[] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage[,] controls judicial interpretation." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1270 (Cal. 1993) (internal quotation

2

marks and citations omitted).  California courts "construe [insurance policies] as would a reasonable layperson, not an expert, attorney, or a historian." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 84 P.3d 385, 391 n.2 (Cal. 2004) (citation omitted).  "A provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1044 (9th Cir. 2020) (quoting *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003)).

We agree with the district court that the Penske Provides Coverage insurance provision is ambiguous.  A layperson could reasonably interpret this provision in two ways: first, to cover the commercial vehicle being rented, as State Farm urges; or second, to cover non-commercial vehicles irrelevant to this transaction, as Defendants urge.

Defendants argue "basic automobile liability insurance" is unambiguous as a term of art defined by state code.  But we are interpreting a contract, not a statute, and the contract did not use "basic automobile liability insurance" "in a technical sense" or give it "special meaning." *See Bay Cities*, 855 P.2d at 1270.  The contract's proviso "with limits as required by the state financial responsibility law or other applicable statute" does not define "basic automobile liability insurance" or specify it is a term of art, and there are financial responsibility laws and statutes applicable to both commercial and personal vehicles. *See E.M.M.I. Inc.*, 84 P.3d at

3

390; *Utah Prop. & Cas. Ins. Guar. Assn. v. United Servs. Auto. Assn.*, 230 Cal. App. 3d 1010, 1021 (Ct. App. 1991) ("Laypersons cannot be expected to know of statutory limitations or exclusions on coverage not contained in their insurance policies.").

The term "basic automobile liability insurance" is ambiguous because "it is not defined in the policy and . . . a layperson's understanding would differ from the legal definition of the term." *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 654 (9th Cir. 1994) (citations omitted). Indeed, Defendants themselves repeatedly refer to L&L's commercial vehicle policy with State Farm of $1 million liability coverage as "an automobile liability policy." If Defendants' "attorney[s]" and "insurance expert[s]" use the term "automobile liability" insurance interchangeably to cover commercial vehicles, a layperson would most likely do so as well. *See Crane v. State Farm Fire & Casualty Co.*, 485 P.2d 1129, 1130 (Cal. 1971).

The contract as a whole also shows the insurance provision to be ambiguous. *Bay Cities*, 855 P.2d at 1271. The cover of the policy declares in bold font that it is for commercial rentals, and the Penske Provides Coverage insurance provision is in the Commercial Rental section. A layperson could think that the Penske Provides Coverage "basic automobile liability insurance" covers commercial vehicles in an amount comparable to the alternative $1,000,000 Customer Provides

4

insurance requirement, which the Agreement presents as the only other option in the very next subsection. Defendants' view "basic automobile liability insurance" as covering an amount appropriate only for Household Rentals, but that would be both legally inadequate and practically pointless for a Commercial Rental. We conclude that the cases cited by Defendants (including an unpublished California Court of Appeal decision) are inapt due to varying factual and legal differences.

The dissent relies on an unpublished California Court of Appeal case, *Golden Eagle Ins. Corp. v. Penske Truck Leasing Co.*, No. E062118, 2015 WL 5320546 (Cal. Ct. App. Sept. 14, 2015), to argue that we misconstrue California law. But California prohibits other courts from citing its unpublished cases. *See Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.8 (9th Cir. 2005) (citing Cal. Rules of Court 8.1115(a)) ("Under California Rules of Court . . . an unpublished opinion cannot be cited to or relied on by other courts."); Cal. Rules of Court 8.1115(a) (with exceptions not relevant here, "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."). As such, it would be improper for our court to rely upon this unpublished, uncitable case. That California courts have occasionally ignored their own rule, as the dissent points out, is no reason to assume that they would regularly do so, or adopt the reasoning of the unpublished decision in

5

*Golden Eagle*. And because California litigants and courts cannot rely on or cite to it, the absence of comment on it from the California courts is similarly unconvincing.

Ultimately, we do not apply a presumption that California courts will follow an unpublished appellate court opinion, as we do with a published opinion of a state appellate court. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994–95 (9th Cir. 2007) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.") (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (internal quotation marks omitted)). As the dissent points out, we are not precluded from considering the unpublished opinion. But given our interpretation of other, published California court decisions, the unpublished decision in *Golden Eagle* is not a conclusive indication of how California courts would rule in a precedential opinion, and we therefore decline to rely on it here.

There was no genuine dispute that L&L customarily relied on Penske Provides Coverage to insure its rentals of commercial vehicles; L&L did not need a minimal personal vehicle policy; L&L was never told that Penske Provides Coverage limited coverage to a certain amount; and the Penske Provides Coverage

$20 per day fee was 320% more expensive than the State Farm Policy's commercial vehicle coverage policy per day average.

Moreover, "ambiguous language is construed against the party who caused the uncertainty to exist. In the insurance context, we generally resolve ambiguities in favor of coverage." *AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1264 (Cal. 1990) (citation omitted). Even accepting Defendants' arguments that L&L's objectively reasonable expectations were undeterminable, summary judgment in favor of State Farm was still proper. *Int'l Bhd. of Teamsters*, 957 F.3d at 1042 (citations omitted). Because the language here is ambiguous, we affirm the district court's order granting summary judgment for State Farm.

**AFFIRMED.**



***State Farm v. Penske Truck Leasing Co.*, Case No. 20-55893
Rawlinson, Circuit Judge, dissenting:**

This appeal involves the application of California law. In that circumstance, we are bound to follow precedent from the California Supreme Court. *See Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017). In the absence of precedent from the Supreme Court, it is our task to predict how the California Supreme Court would address the issue. *See id.* In making this prediction, we give credence to rulings from the California Court of Appeal. *See Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 610-11 (9th Cir. 2020). Because the majority disposition diverges from this established approach, I respectfully dissent.

This case involves contractual interpretation. The contract clause at issue was part of a transaction between Penske and a commercial customer who rented a freightliner truck. The contract provided in pertinent part:

> Penske Provides Coverage. If Customer elects Penske Liability Coverage, Penske agrees to provide liability protection for Customer . . . *in accordance with the standard provisions of a basic automobile liability insurance policy . . .*, with limits as required by the state financial responsibility law or other applicable statute.

(emphasis added).

Both the district court and the majority ignored the clear and explicit

1

language referencing "basic automobile liability" and relied instead on the final phrase to conclude that Penske was required to provide coverage in the amount required for commercial motor carriers.

The problem with the conclusion reached by the district court and the majority is that it flies in the face of a California Court of Appeal decision directly on point, *Golden Eagle Ins. Corp. v. Penske Truck Leasing Co. L.P.*, No. E062118, 2015 WL 5320546 (Cal. Ct. App., September 14, 2015). In *Golden Eagle*, the exact same policy provision was at issue. Insurer Golden Eagle, similarly to State Farm, argued that this identical contract language obligated Penske to provide coverage in the amount required for commercial motor carriers ($750,000), as opposed to the substantially lower amounts required for automobile liability insurance ($15,000 for injury to one person/$30,000 for injury to two or more persons/$5,000 for property damage). The California Court of Appeal rejected the insurer's argument, explaining that the terms of the contractual provision "plain[ly] . . . establish that Penske is promising to provide a basic automobile liability insurance policy." *Id.* at *2 (citations and internal quotation marks omitted). The Court clarified that "automobile liability insurance is a term of art and triggers . . . requirements that are different from the requirements . . . applicable to commercial vehicles." *Id.* (citations and internal quotation marks omitted).

2

The Court also disagreed with the contention that the provision was unclear, clarifying that:

> A *plain reading* of Penske's Liability Insurance provision does not support an interpretation that Penske intended to provide a liability policy with the $750,000 limit required under the Motor Carriers of Property Permit Act. *In clear terms*, the Liability Insurance provision promises to provide a basic automobile liability insurance policy.
>
> . . .
>
> By the *clear language* of the Liability Insurance provision, Penske promises to provide its commercial rental customers with only the coverage required for an automobile liability insurance policy. Had Penske intended to provide the $750,000 combined single limit required for commercial motor vehicles under the Motor Carriers of Property Permit Act, its Liability Insurance provision would not include the phrase "basic automobile liability insurance policy," but rather "commercial vehicle liability insurance policy," or the like.

*Id.* at *3 (emphases added).

The Court emphasized that the language of the provision was plain and the meaning was clear. *See id.* The Court declared that any other interpretation would run afoul of California's rules of contract interpretation. *See id.* at *2-*3. The Court expressly rejected Golden Eagle's various arguments for interpreting the coverage provision as "referencing the Motor Carriers of Property Permit Act." *Id.* at *3. The Court found those arguments "unpersuasive because each requires us to

3

overlook the *clear phrase* 'basic automobile liability policy.'" *Id.* (emphasis

added). The Court reasoned that Golden Eagle's arguments could only succeed if

the Court "were to find ["basic automobile liability insurance policy"] ambiguous,

which [it did] not." *Id.*

The Court concluded:

> Nothing in the Liability Insurance provision or any other
> part of the rental agreement mentions a "commercial
> motor vehicle," a "commercial vehicle liability insurance
> policy," a "motor carrier of property," or the "Motor
> Carriers of Property Permit Act." We cannot read such
> references into the provision to trump the *clear* existing
> reference to basic automobile liability.

*Id.* (emphasis added).

In sum, the California Court of Appeal clearly, emphatically, and decisively

rejected the result reached by the majority. In doing so, the court used the words

"clear" or "clearly" repeatedly in discussing the policy provision at issue. The

majority acknowledges the Court of Appeal decision, but eschews it as

unpublished authority. However, we have specifically concluded that unpublished

authority informs our determination of how the California Supreme Court would

decide a question of California law. *See Employers Ins. of Wausau v. Granite

State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (considering unpublished

California Court of Appeal decision, despite "hav[ing] no precedential value," as

4

"accurately represent[ing] California law" ) (citation omitted); *see also U.S. Bank, N.A., Trustee for Banc of America Funding Corp. Mortg. Pass-Through Certificates, Series 2005-F v. White Horse Estates Homeowners Ass'n*, 987 F.3d 858, 863 (9th Cir. 2021) (explaining that unpublished state decisions may be considered in interpreting state law). After all, three California judges interpreting California law are a far more accurate barometer of how the California Supreme Court would decide this issue. *See Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995), *overruled on other grounds by Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998) (observing that "the states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulations") (citation and internal quotation marks omitted).

The majority casts aside the well-reasoned opinion of the California Court of Appeal because, "California prohibits other courts from citing its unpublished cases." *Majority Disposition* p. 5. The majority cites for this proposition our decision in *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.8 (9th Cir. 2005). However, in that case, the California Supreme Court had granted review of the Court of Appeal decision, thereby superseding that decision. No

similar circumstance is presented in this case. As noted below, no court has questioned in any way the Court of Appeal decision in *Golden Eagle*. And, both before and after *Credit Suisse*, we have considered unpublished decisions to inform our determination of how the California Supreme Court would decide a question of California law. *See e.g., Employers Ins. Of Wasau*, 330 F.3d at 1220 n.8 (pre-*Credit Suisse*) and *U.S. Bank*, 987 F.3d at 863 (post-*Credit Suisse*) *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 n.3 (9th Cir. 2015) (recognizing that "[e]ven though unpublished California Courts of Appeal decisions have no precedential value under California law, the Ninth Circuit is not precluded from considering such decisions as a possible reflection of California law") (citation and internal quotation marks omitted); *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1007-08 & n.2 (9th Cir. 2012) (en banc), *as amended* (relying on unpublished decisions of the California Court of Appeal as "accurately represent[ing] California law . . . [a]lthough they are not precedent" under California rules) (citation omitted); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011) (articulating that "[e]ven though unpublished California Courts of Appeal decisions have no precedential value under California law, the Ninth Circuit is not precluded from considering such decisions as a possible reflection of California law") (citation and internal quotation marks omitted); *Washington v.*

6

*Cal. City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1028 n.3 (E.D. Cal. 2012) (stating that "[t]he Court may cite unpublished California appellate decisions as persuasive authority") (citation omitted); *see also Ovitz v. Chartis Prop. Cas. Co.*, No. CV 15-3916 PSG (PLAx), 2015 WL 12746209, at *4 (C.D. Cal. Sept. 14, 2015) (observing the Ninth Circuit's conclusion that "unpublished Court of Appeal decisions can be useful in determining how a California court would rule on an issue of state law") (citation omitted).

Indeed, this "prohibition" relied upon by the majority is regularly disregarded, as California courts have not only cited to, but adopted the reasoning of unpublished decisions. *See, e.g.*, *Cynthia D. v. Superior Ct.*, 5 Cal. 4th 242, 254 (1993) (in bank) (citing to and "adapting" analysis from the concurrence to an unpublished opinion); *Save Lafayette Trees v. City of Lafayette*, 32 Cal. App. 5th 148, 161 n.11 (2019) (adopting the reasoning of an unpublished decision as the court's "own").

Notably, in the six years since *Golden Eagle* was decided, neither the California Supreme Court nor any California Court of Appeal has questioned the decision or the analysis in that case. This silence is significant because California courts routinely express approval of or disagreement with unpublished decisions. *See, e.g.*, *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800,

7

810-12 (2001) (disagreeing with reasoning articulated in unpublished decision); *People v. Gentile*, 10 Cal. 5th 830, 849-50 (2020) (remaining unpersuaded by two unpublished decisions cited in support of the district attorney's contentions); *Hadian v. Schwartz*, 8 Cal. 4th 836, 842 (1994) (in bank) (granting review of and reversing unpublished decision); *People v. Martinez*, 15 Cal. App. 5th 659, 662 (2017) (observing that "all California appellate districts . . . have weighed in on [an issue splitting the courts of appeal] (albeit in unpublished opinions)," and considering unpublished decisions in resolving the issue); *People v. McDaniels*, 21 Cal. App. 4th 1560, 1566 n.2 (1994) (stating that "[i]f the text of this opinion sounds familiar to the parties and the court below, it should.  Much of it is simply taken from the unpublished opinion by Division Four in *People v. Fanney* (Nov. 30, 1990) A049446, involving the identical issue, the same court and counsel. . . . [T]he analysis in an unpublished opinion may properly be considered"); *People v. Bullard*, No. C091975, 2021 WL 3751139, at *2 (Cal. Ct. App. Aug. 25, 2021) (approving of the reasoning delineated in an unpublished decision "[a]lthough . . . contained in an unpublished portion of the opinion") (citation omitted).  Because the majority goes astray by failing to follow the California Court of Appeal's on-point decision, I respectfully dissent.